UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>RICHARD MORALES | No. 3:94-cr-112 (SRU) |

### RULING ON FIRST STEP ACT MOTION

Richard Morales moves pursuant to Section 404 of the First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018), for a reduction of his sentence. Morales contends that he is eligible for a resentencing on all counts under Section 404 because he was convicted of a "covered offense," and argues that I should exercise my discretion to impose a reduced sentence of time served. The government counters that none of his convictions qualify as "covered offenses" and that, in any event, I should decline to resentence Morales because of his three murder convictions.

Although I agree with Morales that he was convicted of a "covered offense" that entitles him to a plenary resentencing, I decline to reduce his sentence in light of the severity of his crimes. Morales's motion is therefore **denied**.

**I.     Background**

On September 29, 1995, following a jury trial that spanned nearly two months, Morales was found guilty by jury verdict of the following offenses:

- **Count 1**: RICO, in violation of 18 U.S.C. § 1961
    - ***Racketeering Act 1***: Conspiracy to possess with intent to distribute and to distribute heroin, marihuana, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846;
    - ***Racketeering Act 9-a***: Conspiracy to Murder Alex Aponte, in violation of Conn. Gen. Stat. §§ 53a-48 & 53a-54a;
    - ***Racketeering Act 9-b***: Murder of Alex Aponte, in violation of Conn. Gen. Stat. §§ 53a-8 & 53a-54a;

- o *Racketeering Act 11*: Conspiracy to Murder Victor Mojica, in violation of Conn. Gen. Stat. §§ 53a-48 & 53a-54a;
- o *Racketeering Act 14-a*: Conspiracy to Murder Arosmo Diaz, in violation of Conn. Gen. Stat. §§ 53a-48 & 53a-54a;
- o *Racketeering Act 14-b*: Murder of Arosmo Diaz, in violation of Conn. Gen. Stat. §§ 53a-8 & 53a-54a*;*
- o *Racketeering Act 15*: Murder of Tyler White, in violation of Conn. Gen. Stat. §§ 53a-8 & 53a-54a;

- **Count 2**: RICO Conspiracy, in violation of 18 U.S.C. § 1962(c);

- **Count 12**: Conspiracy to Murder Alex Aponte, in violation of 18 U.S.C. § 1959(a)(5);

- **Count 13**: Murder of Alex Aponte, in violation of 18 U.S.C. § 1959(a)(1);

- **Count 19**: Conspiracy to Murder Victor Mojica, in violation of 18 U.S.C. § 1959(a)(5);

- **Count 22**: Conspiracy to Assault "Green Eyed Tito", in violation of 18 U.S.C. § 1959(a)(6);

- **Count 23**: Conspiracy to Assault Victor Fontanez, in violation of 18 U.S.C. § 1959(a)(6);

- **Count 24**: Conspiracy to Murder Arosmo Diaz, in violation of 18 U.S.C. § 1959(a)(5);

- **Count 25**: Murder of Arosmo Diaz, in violation of 18 U.S.C. § 1959(a)(1) and 2;

- **Count 26**: Murder of Tyler White, in violation of 18 U.S.C. § 1959(a)(1) and 2;

- **Count 27**: Conspiracy to possess with intent to distribute and to distribute heroin, marihuana, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846;

- **Count 28**: Possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Second Superseding Indictment, Doc. No. 625; Verdict Form, Doc. No. 945.

On January 29, 1996, Judge Nevas sentenced Morales to life imprisonment on Counts 1, 2, 13, 25, 26, and 27; 10 years' imprisonment on counts 12, 19, 24 and 28; and 3 years' imprisonment on Counts 22 and 23, all to run concurrently. Judgment, Doc. No. 1070, at 2.

2

Approximately twenty-five years into his sentence, Morales now moves a reduced sentence of time served.

**II.   Discussion**

   A. The Fair Sentencing Act and First Step Act

The Fair Sentencing Act of 2010 was enacted "to address the longstanding disparity in federal statutory penalties for crack and powder cocaine offenses." *See United States v. Johnson*, 961 F.3d 181, 182–83 (2d Cir. 2020). Toward that end, the Fair Sentencing Act modified the threshold drug quantities that triggered the various penalty ranges for crack cocaine offenses located in 21 U.S.C. § 841(b)(1). *United States v. Holloway*, 956 F.3d 660, 662 (2d Cir. 2020). As relevant to Morales, the statute raised the threshold quantity for conviction under section 841(b)(1)(a) from 50 to 280 grams of crack cocaine. *Id*.

The Fair Sentencing Act, however, was not retroactive to defendants like Morales, who had been sentenced prior to its passage. *Johnson*, 961 F.3d at 183. That changed in 2018, when Congress passed, and the President signed into law, the First Step Act. *Id*. Section 404 of the First Step Act made retroactive some of the Fair Sentencing Act's provisions. It reads:

> A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

First Step Act § 404(b), 132 Stat. at 5222.

Section 404(a), in turn, defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." *Id*. at § 404(a), 132 Stat. at 5222.

3

The Act articulates only two limitations to its application: it precludes courts from considering motions for a sentence reduction if (1) the sentence in question "was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or (2) a prior motion was brought under Section 404 to reduce a sentence and denied "after a complete review of the motion on the merits." *Id*. at § 404(c), 132 Stat. at 5222. Neither exception applies here: Morales's sentence was not previously imposed or reduced under the Fair Sentencing Act, and he has not made a prior motion pursuant to Section 404 that was denied after a complete review of the merits.

Significantly, Section 404 also declares that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*

The threshold issue here is whether Morales is eligible for relief, which entails an inquiry into whether he was convicted of a covered offense under Section 404. *United States v. Richardson*, 2019 WL 4889280, at *5 (D. Conn. Oct. 3, 2019). If Morales is eligible for relief, I must then determine whether he is entitled to a plenary resentencing and, if so, whether and how I should exercise my discretion to reduce his sentence.

B. <u>Eligibility for Relief</u>

Morales argues, as does the Probation Office, that he was convicted of covered offenses on Counts 27 and Count 28 because he was convicted of "an offense involving 50 grams or more of crack cocaine, the statutory penalties for which were modified by Section 2 of the Fair Sentencing Act." Mem. in Support of First Step Act Mot., Doc. No. 2183, at 17–18 (citation omitted); PSR Addendum, Doc. No. 2182, at 4.

The government counters that Count 27 is not a covered offense because Morales was sentenced under that count for conspiring to possess with intent to distribute at least 1.5

4

kilograms of crack cocaine.  Opp. to Mot. for Resentencing, Doc. No. 2193, at 9–10.  According to the government, because the "1.5 kilograms of crack far exceeds the 280-gram threshold necessary to establish enhanced statutory penalties under 21 U.S.C. § 841(b)(1)(A)," his conviction on Count 27 does not qualify as a covered offense.  *Id*. at 10.

I disagree.  As the government acknowledges, I previously considered and rejected its position because it is the statute of conviction, not the actual conduct, that drives a determination of First Step Act eligibility.  *See, e.g., United States v. Luna*, 2020 WL 464778, at *3 (D. Conn. Jan. 29, 2020) (collecting cases); *United States v. Medina*, 2019 WL 3769598, at *3 (D. Conn. July 17, 2019).

The Second Circuit recently put to rest any lingering doubts in *United States v. Johnson*, where it addressed the precise question at hand: whether a defendant was sentenced for a covered offense even if the relevant conduct involved at least 1.5 kilograms of crack cocaine, a quantity that "would have triggered the same penalty range under Section 841(b)(1)(A)(iii) of Title 21 even after Section 2 of the Fair Sentencing Act increased that provision's quantity threshold from 50 to 280 grams."  *United States v. Johnson,* 961 F.3d 181, 187 (2d Cir. 2020).  Guided by various principles of statutory interpretation, the Court concluded that "the phrase 'Federal criminal statute' is the antecedent of the limiting clause, 'the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act.'"  *Id*. at 189–90.  It necessarily followed, the Court reasoned, that "under Section 404(a) of the First Step Act, if the statutory penalties associated with a particular 'Federal criminal statute' were modified by Section 2 or 3 of the Fair Sentencing Act, then any defendant sentenced for violating that 'Federal criminal statute' has been sentenced for a 'covered offense.'"  *Id*.  The Court continued:

> Section 404(a) thus delineates its coverage by reference to a category of
> statutory offenses for which defendants might be sentenced, not the

5

> virtually infinite set of specific actions that might give rise to those sentences. In other words, it is a defendant's statutory offense, not his or her "actual" conduct, that determines whether he has been sentenced for a "covered offense" within the meaning of Section 404(a), and is consequently eligible for relief under Section 404(b).

*Id.* at 190.

Applying the foregoing principles, the Court held that, "[b]ecause the district court imposed a sentence for Davis's violation of, *inter alia*, 21 U.S.C. § 841(b)(1)(A)(iii), and because Section 2 of the Fair Sentencing Act changed the penalties associated with that statute," Davis was sentenced for a covered offense and thus was eligible for relief under the First Step Act. *Id.* at 183, 191.

In this case, the penalties associated with Count 27's statutes of conviction, 21 U.S.C. §§ 841(a)(1) and 846, were likewise amended by Section 2 of Fair Sentencing Act. *Id.* at 190 ("Section 2 of the Fair Sentencing Act modified the statutory penalties associated with a violation of [Sections 846, 841(a)(1), and 841(b)(1)(A)(iii)] by increasing Section 841(b)(1)(A)(iii)'s quantity threshold from 50 to 280 grams."). For that reason, and because it is undisputed that Morales's offense was committed before August 3, 2010, Count 27 qualifies as a covered offense.

The same goes for Count 28. The statutes of conviction for that count are 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), both of which were modified by Section 2 of the Fair Sentencing Act. *Id.* That count therefore constitutes a "covered offense" as well, which qualifies Morales for relief under the First Step Act. *Id.*

C. Scope of Relief

Having decided that Morales is eligible for relief, I must now determine the scope of that relief. Specifically, I must decide whether Morales's eligibility for relief entitles him to a

plenary resentencing on all counts, and if so, whether I should exercise my discretion to impose a reduced sentence.

Whether eligibility for relief under the First Step Act entitles a defendant to a full, plenary resentencing on all counts of conviction, including non-covered ones, is an issue on which the Second Circuit has yet to rule and on which the district courts are split.  I have previously held that a defendant who is eligible to relief under the First Step Act for a covered offense is entitled to a full resentencing.  *See, e.g., United States v. Adams*, Case No. 04-cr-236, Doc. No. 77 at *6 (D. Conn. Aug. 20, 2019); *United States v. Luna*, 436 F. Supp. 3d 478, 485–89 (D. Conn. 2020); *United States v. Medina*, 2019 WL 3769598 (D. Conn. July 17, 2019).  Because the reasoning that animated those decisions applies equally here, I conclude that Morales, too, is entitled to plenary resentencing.

As I discussed in my opinion in *Luna*, "[l]imiting resentencing to only the covered offense . . . weakens a sentencing court's authority."  *Luna*, 436 F. Supp. 3d at 487.  I explained:

> A sentencing court must sentence the *defendant*, not the crime, and must craft a sentence that is "sufficient but not greater than necessary' to fulfill the purposes of sentencing."  When resentencing is permitted by statute, allowing a court to look only at the covered offense, and not the entirety of the circumstances, undermines the great responsibility a sentencing court undertakes—to impose a fair sentence upon the defendant. At every sentencing, the court must consider the totality of the circumstances or it runs the risk of imposing a sentence that is greater than necessary to serve the purposes of sentencing.

*Id*. (internal citation omitted).

I also noted that a limited resentencing proceeding would conflict with the Sentencing Guidelines:

> When a defendant has been convicted of more than one count, the Sentencing Guidelines in various ways require a court to aggregate and bundle together those convictions. In addition, when a sentencing judge sentences a defendant convicted of multiple counts, the judge imposes a single "total punishment."  Because the Sentencing Guidelines require a

7

> sentencing judge—in various ways—to unify counts of conviction and impose a logical, single sentence, numerous courts have noted that when a defendant is entitled to a resentencing under section 404(b) of the First Step Act on one count of conviction, the defendant must be entitled to a plenary resentencing on all counts of conviction.

*Id*. at 487–88 (internal citation omitted).

In addition, I discussed how the Section 404 of the First Step Act grants broad discretion to judges to determine whether to impose a reduced sentence, and how that authority should be read in the most comprehensive way possible, consistent with the remedial purpose of the First Step Act. *Id.* at 489. Indeed, "limiting the application of the First Step Act when judges grant section 404(b) motions would dilute Congress' intent and would undermine the consistent understanding that ambiguities should be resolved in favor of the defendant." *Id*. (emphasis omitted).[1]

I applied similar reasoning in concluding that Garry Adams and Luna's co-defendant, Bobby Medina, were also entitled to a plenary resentencing. *See Adams*, 04-cr-236, Doc. No. 77, at 6–7 (considering sentencing courts' authority to take into account the entire sentencing package at resentencing, the First Step Act's remedial purpose, and the broad discretion afforded to judges); *Medina*, 2019 WL 3769598, at *4–7 (considering the language and remedial purpose of the First Step Act, the broad discretion it grants to judges, and the Sentencing Guidelines).

---

[1] I note that, in *Luna*, I also considered principles of statutory interpretation in determining that the defendant was entitled to a plenary resentencing. I specifically concluded that, because section 404 does not mention 18 U.S.C. § 3582(c)(1)(b) and because of section 404's use of the word "impose," a motion under section 404 could not be construed as one under section 3582(c)(1)(B), which authorizes a court to "modify" a term of imprisonment to the extent "expressly permitted by statute." *Id.* at 485–87.
  Since my holding in *Luna*, however, the Second Circuit held in a separate case that 18 U.S.C. § 3582(c)(1)(B) "provides the correct framework for consideration of a motion for a reduction of a term of imprisonment under the First Step Act." *United States v. Holloway*, 956 F.3d 660, 661 (2d Cir. 2020). Although that ruling appears to foreclose my statutory interpretation analysis, I believe my other reasons, noted above, still stand and sufficiently support Morales's entitlement to a plenary resentencing.

The government asserts that Morales is not like Luna or Medina. Mem. in Opp. to First Step Act Mot., Doc. No. 2193, at 15. It argues that the covered offenses drove the total effective sentences in those cases, whereas in this case, Morales's total effective sentence was independently driven by three non-covered murder convictions. That is, "[h]ad Section 2 of the Fair Sentencing Act been in effect at the time of Morales's sentencing, Morales would not have been subject to lesser penalties based on the quantity of crack-cocaine as to both Counts 27 and 28, and would not have received a lesser sentence on any of the murder counts either." *Id*. Pointing to the PSR addendum, the government elaborates that, although the overall offense level for Group One, which comprised of Counts 1, 2, 27, and 28, would have decreased from 46 to 41, the overall Guidelines calculation of life imprisonment would have remained unchanged. *Id*.

Even though *Luna* and *Medina* are distinguishable on that basis, that distinction is not a meaningful one. Indeed, in *Adams*, the defendant pled guilty to a two-count indictment charging him with possession with intent to distribute five grams or more of cocaine base [Count One] and possession of a firearm and ammunition by a convicted felon [Count Two], and was thereafter sentenced to 210 months' imprisonment on each count, with the terms to run concurrently. Case No. 04-CR-236, Doc. No. 77, at 1, 2. There was no indication that he would have received a lesser total sentence following the Fair Sentencing Act. To the contrary, the PSR addendum provided that the total offense level, and thus the guidelines range, remained the same because the adjusted offense level on Count Two did not change, and because Counts One and Two were grouped together. *Id*., Doc. No. 69, at 3. Nonetheless, I concluded that Adams was entitled to resentencing on both counts in light of my authority to consider the entirety of a sentencing package during sentencing, the broad discretion afforded to judges under the First Step Act, and

9

the First Step Act's remedial purpose. *Id.*, Doc. No. 77, at 2. The government's attempt to distinguish this case is therefore unavailing.

For all the foregoing reasons, I conclude that Morales is entitled to a plenary resentencing on all counts. He, like Medina, Luna, and Adams, has a right to receive the full benefit of the First Step Act's remedial purpose.

That leaves the question of whether and how I should exercise my discretion to reduce Morales's entire sentence. Even if Morales is entitled to a plenary resentencing, he is not necessarily entitled to a sentence reduction. *Holloway*, 956 F.3d at 666 ("the First Step Act is clear that it does not 'require a court to reduce any sentence'") (citing Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222). Whether to reduce a sentence is "a matter left to the district court's sound discretion." *Id.*

I have previously relied on the 18 U.S.C. § 3553 factors to guide my decision whether to impose a reduced sentence. *See, e.g., Adams*, Case No. 3:04-CR-236, Doc. No. 77, at 7. Other courts in this circuit have engaged in similar approaches. *See, e.g., United States v. Richardson*, 2019 WL 4889280, at *10 (D. Conn. Oct. 3, 2019) ("Having determined that Mr. Richardson is eligible for consideration of relief under the First Step Act, the issue instead is whether the length of that sentence should now be reduced, taking into consideration his various criminal acts and all of the other factors relevant under 18 U.S.C. § 3553(a)."); *United States v. Page*, 2020 WL 1698671, at *4 (D. Conn. Apr. 8, 2020) ("The extent of the reduction that should be granted under the First Step Act is determined by considering the sentencing factors in 18 U.S.C. § 3553(a)."); *United States v. Jones*, 2019 WL 6907304, at *6 (D. Conn. Dec. 19, 2019) ("The Court agrees that its exercise of discretion should be informed by the § 3553(a) factors."); *United States v. Rose*, 379 F. Supp. 3d 223, 231 (S.D.N.Y. 2019) ("This Court concludes that

the First Step Act authorizes the Court to re-evaluate § 3553(a) factors in light of post-sentencing factual developments."). I see no reason to depart from that approach here.

After considering the entirety of the record, including post-sentencing factual developments, I conclude that the section 3553(a) factors counsel against a reduction of Morales's sentence. Morales committed the most serious kind of crime—murder. He took the lives of not just one individual, but three. Each murder was carried out in a particularly brutal manner, and Morales, a then-senior member of the Latin Kings, was far more than a mere accessory in their execution. Indeed, Morales's leadership role in the murders led Judge Nevas to impose a two-level enhancement for each of the three murders. *See* PSR, Doc. No. 2182-4, at ¶¶ 114, 138, 114; PSR Supp., Doc. No. 2182, at 2–3.

I acknowledge that Morales's rehabilitation has been exceptional. Among his many accomplishments, Morales has earned an Associate's Degree and Bachelor's Degree, completed an extensive amount of BOP programming, maintained employment, and received no disciplinary citations in over two decades. Mem. in Support of First Step Act Mot., Doc. No. 2183, at 12, 22–23. He has volunteered as a suicide watch companion for over 11 years and regularly donates his limited earnings from his BOP employment to charity. *Id*. at 23. Even more, Morales has publicly renounced his affiliation with the Latin Kings, and his remorse for his crimes is duly noted. *Id*. at 1, 28.

I also recognize that Morales's criminal behavior was very likely shaped by his difficult upbringing, which was marked by physical abuse at the hands of family members. *Id*. at 24. I

11

further acknowledge that Morales might be at an increased risk of serious complications from COVID-19 in light of his underlying medical conditions.[2] *Id*. at 39–44.

The need to reflect the seriousness of the crimes, to afford adequate deterrence, and to protect the public, however, all still weigh against a reduced sentence. Although I commend Morales for his many accomplishments in prison, the fact remains that he was sentenced to six life sentences. Reducing those sentences to a time-served sentence of thirty years would not, in my view, comport with the statutory goals of sentencing.

For the foregoing reasons, I decline to reduce Morales's sentence. *United States v. Ruffin*, 2020 WL 2519949, at *3 (S.D.N.Y. Apr. 9, 2020) (declining to grant relief under section 404 in light of the seriousness of the offenses); *United States v. Mehmeti*, 2020 WL 2747978, at *2 (E.D.N.Y. May 27, 2020) (same). Having decided not to reduce Morales's sentence, there is no need to hold a hearing.[3]

## III.    Conclusion

For the foregoing reasons, Morales's motion for a reduction pursuant to Section 404 of the First Step Act (doc. no. 2176) is **denied**.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 20th day of August 2020.

---

[2] Morales has filed a separate motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his COVID-19 vulnerability. *See* Mot. for Release, Doc. No. 2242. I will address that motion in a separate decision.

[3] Although I previously noted that a plenary resentencing hearing "carries with it all of the procedural trappings and collateral effects of the original sentencing," including "the defendant's presence, unless waived," *Medina*, 2019 WL 3769598, at *5 (citation omitted), the Second Circuit's recent decision in *Holloway* instructs that the defendant's presence is no longer required. As I noted above, the Court held that 18 U.S.C. § 3582(c)(1)(B) "provides the correct framework for consideration of a motion for a reduction of a term of imprisonment under the First Step Act." *Holloway*, 956 F.3d at 661. Federal Rule of Criminal Procedure 43, in turn, states that a defendant's presence is not required when the proceeding "involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." Fed. R. Crim. P. 43(b)(4); *see also United States v. Crews*, 385 F. Supp. 3d 439, 448 (W.D. Pa. 2019) ("A plain reading of Rule 43(b)(4) provides that Crews' appearance is not required for the court to reduce his sentence under § 3582(c)(1)(B).").

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
